Good morning, Your Honor. Can everyone hear me okay? Okay, good. This is Alan Schoenfeldt for Appellant Credit One Bank. May it please the Court. The threshold question in this case is whether the live box system that Alorica used to make the calls at issue is an ATDS. Under settled Second Circuit precedent, it is. But as I'm sure the Court is aware, this precise question is before the Supreme Court in the Facebook case, which was argued in December. And should the Supreme Court decide the Facebook case consistent with the views of the Third, Seventh, and Eleventh Circuit, then the live box system is not an ATDS, there is no TCPA liability, and none of the other challenging questions presented in this case would need to be answered. And so Credit One submission is that this Court may sensibly decide to defer a decision on this case pending the Supreme Court's decision in Facebook. As to the other issues presented here, I'd like to focus on two, though I'm of course happy to answer any questions the Court might have. In particular, I'd like to focus on one, why the District Court erred in granting summary judgment on the question of Jimenez's ownership of the cell phone during the relevant time period, and two, why the District Court erred in charging Credit One with statutory damages for 43 call attempts that were never quote made within the meaning of the statute. The District Court on the first question found that it was undisputed that your client was the holder of the cell phone account, I mean that Mr. Jimenez was the holder of the cell phone account connected to the subject number. You're saying that there is a material issue of fact on that point. It would help us if you'd marshal the evidence that raises that material issue. Absolutely, Your Honor, and I'd point out that the parties agreed that there was a disputed issue of fact below. After the Court entered summary judgment on the question of whether the system was an ATDS, the parties agreed at page 8373 that, quote, a trial is necessary to resolve the issue of whether and when the plaintiff obtained the cell phone number. But to answer your question specifically, Judge Livingston, the issue here was raised in paragraph 2 of Appellee Jimenez's 56.1 statement and paragraph 13 of Credit One's counterstatement. The evidence Jimenez offered was his own testimony about his ownership of the phone. The counter evidence that Credit One and Alorica submitted were call records that specifically contradicted everything Appellee said about his ownership of the phone. There were specific factual issues called into question in his account, which was the only evidence he supported in the ownership. This isn't a case where we broadly or conclusively impugned his credibility. Jimenez said that he used to receive calls... Is the disagreement over the timing of when he owned it? Or, I mean, Credit One doesn't dispute that at some point he owned the phone, right? We do. I think there's no evidence apart from his own testimony that he was the holder of the phone. That he was ever the holder of the phone. Correct. There's no reliable evidence. There's certainly not evidence to carry his burden at summary judgment that he was the owner of the phone. I mean, the discrepancies... So, is the idea that the discrepancies between your call logs, which are part of the record, and his testimony about when he owned the phone and when he received calls and whether he spoke to someone and those discrepancies there raise a material issue of fact as to whether he may have been mistaken about his ownership of the phone. Correct, Your Honor. I think they tell two very different stories that a jury was entitled to hear. This is not a case... Mr. Schoenfeld, let me just ask you, though. You did raise a number of these facts in your papers before us about he said he got calls late at night. There was no call after 9 p.m. that he picked up every time. There's no evidence of that from the call logs. But before the district court, the only fact you raised was that he said he never spoke to a live person and your logs indicated on March 27th he spoke to a live person and then the calls stopped. You didn't point to those other pieces of evidence to the district court. I looked very carefully in your papers. Those were not raised. But you did raise one disputed fact. Certainly, and I think that disputed fact suffices. I mean, that was pointed out as an example in our response to their 56.1 paragraph and our own paragraph 13. I just emphasize and I'll wrap up and save the remainder of my time for rebuttal. I just emphasize this was his burden. He was required to show that there was no material issue of disputed fact as to this element of his claim. Credit one bore no burden because he was the move in here. What we pointed to in response to his 56.1 statement certainly sufficed to contradict the account that he was providing to the court on this element of the claim. Thank you. We'll hear from your colleague. Good morning, Your Honors. Brian Melendez on behalf of Alorica. May it please the court. First, I will be addressing two issues. First, reasonable reliance. And second, the status of the FCC's pre-2015 orders about predictive dialers. First, on reasonable reliance. The appellants were entitled to reasonably rely on Credit One's cardholders' prior express consent for calls to the number that was allegedly reassigned to Mr. Jimenez without the appellant's knowledge. Now, Your Honors, no call reached a human being until late March 2017 when his That's nowhere in the statute. This whole reasonable reliance argument is nowhere derived from the statutory language, right? It's not in the statutory language, Your Honor, but the FCC adopted a rule with a with a one call safe harbor based on a reasonable reliance theory. The ACA International Court struck down that, struck down that rule, but because they said one call, if you're going to have a safe harbor, one call is not enough. Isn't the fact that they thought you needed a safe harbor an indication that it's not currently in the statutory language? Your Honor, we don't dispute that it's not currently in the statutory language, but as far as we know, there are only three federal courts that have addressed this issue. They have all found that there is a reasonable reliance element in the law. Those courts are the Sando Court in the District of Massachusetts, the Rourke Court in the District of Minnesota, and the AMP Auto Court in the Eastern District of Louisiana. Right, but no circuit court has said that. And every circuit on this issue of who the the 11 circuits have all said it's the actual recipient and not the intended recipient, as you argue. Yes, Your Honor, but none of those courts has specifically addressed the reasonable reliance argument, but you're correct. There is no appellate authority supporting our position. There are only three district courts. Your Honor, if there are no further questions on reasonable reliance, I'll turn to the pre-2015 orders. Your Honor, the ACA international ruling invalidated the FCC's 2003 and 2008 orders about predictive dialers. Now, why does this matter? The pre-2015 orders were the only basis for the district court's conclusion that the LiveVox platform was a predictive dialer, and that was the only basis for holding that the LiveVox platform was an ATDS within the statute. So, why are the orders invalid? Your Honor, the 2015 order that was under review in the ACA international case reiterated the prior rulings from 2003 and 2008. Now, under the Hobbs Act, the ACA international court was the only forum able to decide whether the scope of judicial review covered the pre-2015 orders, and the ACA international court decided that its review did and concluded that the series of orders collectively fails to satisfy the requirement of reasoned decision-making. Your Honor, I see that I've only got 20 seconds left, so I will ask if there are any questions. If there are none, Your Honors, thank you very much. I've reserved some time for rebuttal, which will be done on behalf of all the appellants by Mr. Schoenfeld. Thank you, Mr. Melendez. We'll hear from the appellee. Good morning. May it please the court. Yitzhak Zillman for the plaintiff. Your Honors, in order to establish a claim under the Telephone Consumer Protection Act, we were required to establish three elements, that the calls were placed using an automatic telephone dialing system, that the calls were placed to a phone number assigned to a cell phone, and that the calls were placed without the prior express consent of the call party. The ATDS question, in my opinion, is by far the easiest. As we just heard, Credit One agree, it is an ATDS under current Durant law in the Second Circuit, under Durant v. La Boom Disco. In terms of the FCC's orders, it's funny that they say that we can just ignore that, because ALERCA specifically concedes on page 43 of its brief, that under the doctrine of primary jurisdiction, the 2003 and 2008 rulings are binding on the issue. The only issue before the Supreme Court in Facebook is the statutory definition of ATDS, which is what this court grappled with in Durant, and the circuit courts have grappled with across the country. But regardless of what happens in the Supreme Court, we still have these FCC orders, these longstanding FCC orders. Since 2003, over 18 years ago, the FCC has consistently held that predictive dialers are an ATDS under the statute, regardless of whether or not it can store phone numbers and automatically dial them, or if it can randomly generate numbers from ThinAir. They held that in 2003, 2008, 2012. The statute specifically gives the FCC the ability to, and the power to, issue rules and regulations under the statute. You can see that in 47 USC 227b2. And again, no one in this case has ever questioned the FCC's authority to, one, issue these rules, and two, the binding nature of these rules. In fact, both of the appellants have conceded that. Again, ALERCA, page 43 of its brief, says that. And Credit One, similarly, in the lower court, they argued that the only way to challenge these FCC orders is under a Hobbs Act petition. You can see that in the lower court record, which is at docket 60, ECF page 20. They both have agreed that these orders are binding, and that the only way to challenge them is through a Hobbs Act appeal. Now, a Hobbs Act appeal was filed as to the 2015 order, as this court specifically found in Duran less than one year ago. That Hobbs Act did not touch these prior orders. They're still valid and in effect. And in fact, this court adopted its holding in Duran in order to follow those longstanding orders. That's specifically taken right from the language of the Duran holding, your honors. And so given the fact that none of the parties here have actually disputed the binding nature of the FCC's orders, this court should do exactly what it did in NIGRO versus Mercantile Adjustment Bureau in 2014, where the court held, since neither party actually challenges the FCC's interpretation of the TCPA, we need not decide the extent to which the Hobbs Act limits our jurisdiction to review that interpretation. Let me ask you, can I ask you about the disputed factual issue regarding whether or not your client held the phone? They point out, obviously there's no documentation, and I'd like you to address that. But they also did point to the fact that he said he never received a live call and their call logs indicate there was a live call that essentially ended these calls because someone told, and he said he was the only one who made calls on the phone. Someone said it was the wrong number on March 27th, and then the call stopped, which is obviously pretty big event as relates to this case, at least. So why isn't there a disputed issue effect in combination? Sure. So let's talk about what the evidence established regarding when Mr. Jimenez testified in his deposition that he got his cell phone in January. He says it over and over again that he got the cell phone in January. You can see that in his deposition transcript in the record at A31, A39, 40, 60, and 61. They separately asked him another question after that, which was, well, Mr. Jimenez, when did these calls start to your cell phone? What can you remember about these calls? And sitting there in his deposition in April of 2018, 15 months after he got these calls, Mr. Jimenez truthfully said, you know what? I don't remember exactly when these calls started. You can see that in the record at A61. That's what he said. Elsewhere he said- What about the fact that he said he repeatedly got calls overnight and their logs indicate there was never a call after 9 p.m. at any point. Why isn't that significant? He said he got calls all the time overnight, late at night, overnight. His wife thought he was cheating. That's true. I remember that, Your Honor. And that was a topical part of the deposition, I can say that. But again, the call logs aren't necessarily a perfect reflection of what happened. For example, the times. Some of these times say like 5 in the morning. But what we learned in the deposition, and it's in the deposition transcript of either Credit One or Illorica, those are Pacific time. It's not Eastern time. So the hours are three hours off. You have these different things in the call logs where they're trying to use uncertainty about what happened. The call logs were generated by a computer, right? I mean, in other words, putting aside the issue of whether it's Pacific time or Eastern time, there's no reason to doubt the accuracy of the call logs. Is that true? Sure, of course, Your Honor. I won't dispute that. But here's what I'm trying to say, Your Honor. When Mr. Jimenez got a cell phone, that was a memorable event for Mr. Jimenez, right? He specifically testified how he remembered going to the Metro PCS store at the intersection. There may be good explanations for the inconsistencies, etc. The question is, why don't they create an issue of fact? Because what I'm trying to get at, Your Honor, is the question is when did Mr. Jimenez get his cell phone? There is one piece of evidence in the record, the only piece of evidence, which is his testimony, his consistent testimony. He got this in January. Why did he have no documentation that it was his phone? No evidence, for example, that he listed that phone with third parties as a contact number for him? Wouldn't there be some documentation normally? Someone was using a cell phone as he said he was? Yes. Often, Your Honor, what happens is we subpoena the call records from a carrier like Verizon or AT&T. That's what we did here. Everyone subpoenaed Metro PCS. The difference is Metro PCS is kind of a low-cost carrier. They don't actually maintain call logs or subscriber things. They did give us the call logs that you see in the record, the Metro PCS records, but they weren't able to the subscriber information. We tried. It's not like we're trying to hide the ball here. Why wouldn't he be able to put documentation that with all the various entities that he deals with on the internet, doctors, that he was using that number as a contact number? Wouldn't there be some documentation he could produce? Or bills. What about bills? Right. Metro PCS doesn't have bills. That was the problem. The only thing they have is they text him once a month and say, it's time to pay your $60. It's a pay-as-you-go carrier. I'm talking about third parties. Why doesn't he have any document from a third party where he listed that as his cell phone number? I mean, listen, if he had a business card, I agree. I'd put the business card in the record. He doesn't. In terms of going to his doctor and saying, hey, can you give us his patient records here and show us that he listed the phone number? We didn't feel like that was necessary, Your Honor. They asked him. Unless they're saying that he's absolutely lying about having this phone and he just made this whole story up and that some other person is the one who got these calls all along, but there's no evidence in the record for any of that. All they're trying to say is that because the call logs show that the call stopped at nine, but he thinks that the calls came later. Therefore, there's a question of fact here. But again, the fact of the matter is he's unequivocally testified over and over again that he's gotten this phone since January of 2017. And then he gave up the number at the end of 2017, around December time. There's nothing in the record to contradict that. What about the 43 calls, the apparently unsuccessful 43 calls? Sure. So the 43 calls, basically they're saying that if you look at the call log, 337 calls say something like no answer. And the other 43 say something like invalid phone number. Now in the lower court, Judge Swain issued an order to show cause, asking why should I not award summary judgment for all 380 calls? And in the lower court, both Credit One and Alorica argued that these 43 calls were made at a time that Mr. Jimenez didn't pay a cell phone bill. So the phone must've been disconnected and therefore it wasn't a phone number assigned to a wireless service. That's what they argued. You can see the written submission at 8389 to 8390 in the record. And also at oral argument, that's what Alorica's counsel argued. You can see the transcript of that at 8382. They argue that specifically. Now on appeal, they're telling the court that Judge Swain messed up because she didn't consider other as the wireless carrier might've messed up or the phone didn't work or something like that. But they didn't argue any of that in the lower court. The only thing they argued in the lower court was that these records show that he didn't pay his bill, but we've showed in response, that doesn't make any sense. If you look at the call logs, you have many days, such as January 7th, 2017, where- On appendix page 120, they had a corporate designee who said that the system, that it was intercepted or disconnected before they made it to the consumer. Their experts said it was rejected by the PCSTN. The bottom line is they said it didn't go through. Whatever the reason was, they were pretty categorical. Those calls didn't go through. So again, it's just as Judge Swain said, it doesn't issue a fact as to whether or not the calls went through or not. Not the exact reason, right? Well, no, Your Honor, because again, they don't argue that in opposition to their summary judgment motion. And of course, what they can argue to this court is cabined by what they argued in the lower court. However, if- They argued the calls didn't go through, right? Based on one reason, which was the non-disconnection and non-payment of Mr. Himenez's cell phone. We pointed out it makes no sense that that happened because you have calls, for example, on January 7th, where there's seven calls. The first four say no answer. The fifth one says invalid phone number. The next two say no answer. You could see that in the record at 8396. Clearly, the phone doesn't go to being a phone number associated with a wireless number to not, and then back in the exact same day. And you can see that again, February 23, February 25, March 5th. Now again, if it creates a question of fact as to those 43 calls, then of course, if that is what this court wants to find, there's still a summary judgment suitable for the other 337 calls that don't have this invalid number designation. But we maintain that summary judgment was proper for all 380 calls based upon what they argued in the district court and what the district court found as part of those summary judgment findings. I can talk a little bit about reasonable reliance if your honors would like me to, because as your honors pointed out, there is no reasonable reliance in the statute. That's why the FCC went ahead and they're creating the safe harbor for companies that regularly check the FCC's reassigned number database and try in good faith to call people who they should be calling, and then they can get a safe harbor. They're still in the midst of working that. But when the FCC looked at this issue back in 2015, they specifically said that there was no basis in the statute or the record before us to conclude that callers can reasonably rely on prior express consent beyond one call to reassign numbers. You can see that in the FCC's 2015 order, section 90 footnote 312. Thank you. Thank you, Mr. Zellman. Your time is up and thank you for your argument. We will hear rebuttal. Thank you, your honor. I want to address four points quickly. The first one regards the Facebook decision. I think everyone agrees that the statutory question here of what an ATDES means and requires is squarely before the Supreme Court. I think I understood Mr. Zellman to suggest that FCC's rulings with respect to what a predictive dialer is and whether a predictive dialer is an ATDES would survive a decision by the Supreme Court agreeing with the third, seventh, and eleventh circuit. I don't think that's true. The predicate understanding of this statute, which the FCC was interpreting and making rulemaking, was wrong. We point this out on page two of the reply brief. The 2012 rulemaking with respect to predictive dialing said that the ATDES can cover equipment regardless of whether the numbers called are randomly or sequentially generated or come from calling lists. That predicate interpretation of the statute upon which the FCC's rulemaking authority depends is squarely before the Supreme Court right now. If the Supreme Court disagrees with this court, those rulemakings are no longer permissible interpretations and permissible exercises of the FCC's rulemaking authority. I think to answer the question that I believe Judge Bianco put to counsel, Facebook will decide the question about the ATDES one way or the other. I think, given the variety of ways that that decision could come out, it certainly stands to reason that the FCC's rulemaking with respect to predictive dialers will be at issue if the Supreme Court decides the case in Facebook's favor. Their enduring persuasive value will be called into question. Second, with respect to the intended recipient argument, I'm not going to belabor the point here, but Judge Bianco, I certainly concede that three courts of appeals have decided the question the opposite way, but the same was true with respect to the question this court disagreed with three court of appeals on in Duran. And so the question of what an intended recipient is, quite frankly, I think we have the better legal argument. I won't belabor it in the last 59 seconds of my rebuttal. I think it's fairly presented in the brief, but I wouldn't, you know, if this court needs to decide it, I would decide it as the court, I'm sure, will de novo based on the statute and all of the regular tools of interpretation. I wouldn't necessarily look to those three decisions, which essentially build on each other for guidance. With respect to the question of the ownership, I think Judge Bianco, you pointed it out exactly. There are significant discrepancies in the accounts between the two The most significant one is the one we pointed to in our I think the other thing that Judge Bianco pointed out was that you didn't make most of these arguments before the district court. So why should we let you make those arguments now? Certainly. Well, so first, I think Judge Bianco acknowledged that in the 56.1 statement and counter statement, we did make the most significant, we pointed out the most significant of these discrepancies, which was that as to the significant terminal call that ended this entire affair, we present that that was specifically what we pointed to as a material discrepancy, suggesting that his account of whether and when he owned the phone was incorrect. And second, and I think this touches on both the 43 calls and the ownership question, and I'll end here is, again, it was Mr. Jimenez's burden at summary judgment to prove that there were no materials facts standing between his way and summary judgment on the ownership question, and with respect to liability for each and every one of those calls. With respect to the 43 calls where the register said invalid phone number, he needed to persuade the court that those were that those calls reached him within the meaning of the statute or were made within the meaning of the statute, and therefore statutory damages could attach to them and our submission is he failed to carry that burden. Thank you. Thank you all. Nicely argued and we will take the matter under advisement. Thank you, Your Honor. Thank you, Your Honor.